UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
COLUMBUS DIVISION

| | |
|---|---|
| JERAD KITZLER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ROOT, INC., ALEXANDER TIMM, DANIEL ROSENTHAL, MEGAN BINKLEY, CHRISTOPHER OLSEN, DOUG ULMAN, ELLIOT GEIDT, JERRI DEVARD, LARRY HILSHEIMER, LUIS VON AHN, NANCY KRAMER, NICK SHALEK, SCOTT MAW, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC. and WELLS FARGO SECURITIES, LLC,<br><br>Defendants. | No. 2:21-cv-01301<br><br>CLASS ACTION<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAW**

MURRAY MURPHY MOUL + BASIL LLP
JOSEPH F. MURRAY
1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400

ROBBINS GELLER RUDMAN
 & DOWD LLP
SAMUEL H. RUDMAN
MARY K. BLASY
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100

ROBBINS LLP
BRIAN J. ROBBINS
GREGORY DEL GAIZO
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990

Plaintiff Jerad Kitzler ("plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Root, Inc. ("Root" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of the Class A common stock of Root pursuant and/or traceable to the Registration Statement and Prospectus issued in connection with Root's October 29, 2020 initial public stock offering (the "IPO"), seeking to pursue remedies under the Securities Act of 1933 (the "Securities Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§11 and 15 of the Securities Act [15 U.S.C. §§77k, 77l(a)(2) and 77o]. This Court has jurisdiction of this action pursuant to §22 of the Securities Act [15 U.S.C. §77v] and 28 U.S.C. §1331.

3.      Venue is properly laid in this District pursuant to §22 of the Securities Act and 28 U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part in this District where Root is headquartered. Each of the Underwriter Defendants (defined below) does substantial business in this District and in this state as well.

4.      In connection with the acts alleged in this Complaint, defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

5. Plaintiff Jerad Kitzler, as set forth in the accompanying certification, purchased Root common stock pursuant and/or traceable to the IPO, and was damaged thereby.

6. Defendant Root is the parent company of Root Insurance, a Columbus, Ohio-based insurance carrier that conducts all sales online. Root has two classes of common stock: Class A common stock and Class B common stock. The rights of the holders of Class A common stock and Class B common stock are identical, except with respect to voting, conversion and transfer rights. Each share of Class A common stock is entitled to one vote. Each share of Class B common stock is entitled to ten votes and is convertible at any time into one share of Class A common stock. Immediately prior to the IPO, all shares of Root's prior capital stock outstanding, including all shares held by Root's executive officers, directors and their respective affiliates, and all shares issuable on the conversion of any outstanding preferred stock, were reclassified into shares of Class B common stock. The holders of the outstanding Class B common stock following the IPO hold approximately 97% of the voting power of Root's outstanding capital stock immediately following the IPO. Following the IPO, the Root Class A stock sold in the IPO trades on the Nasdaq Global Select Market under the ticker symbol "ROOT."

7. Defendant Alexander Timm is, and was at the time of the IPO, the Chief Executive Officer and a director of Root.

8. Defendant Daniel Rosenthal is, and was at the time of the IPO, the Chief Financial Officer and a director of Root.

9. Defendant Megan Binkley is, and was at the time of the IPO, the Chief Accounting Officer of Root.

10. Defendants Christopher Olsen, Doug Ulman, Elliot Geidt, Jerri DeVard, Larry Hilsheimer, Luis von Ahn, Nancy Kramer, Nick Shalek and Scott Maw are, and were at the time of the IPO, directors of Root.

11. The defendants named in ¶¶7-10 are referred to herein as the "Individual Defendants." The Individual Defendants each signed the Registration Statement.

12. Defendants Goldman Sachs & Co. LLC ("Goldman Sachs"), Morgan Stanley & Co. LLC ("Morgan Stanley"), Barclays Capital Inc. ("Barclays") and Wells Fargo Securities, LLC ("Wells Fargo") are investment banking firms that acted as underwriters and co-lead book running managers of Root's IPO, helping to draft and disseminate the offering documents (the "Underwriter Defendants"). Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a) The Underwriter Defendants are investment banking houses that specialize, *inter alia*, in underwriting public offerings of securities. They served as the underwriters and underwriter representatives of the IPO and shared more than $39.8 million in fees collectively. The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were willing to merchandize Root stock in the IPO;

(b) The Underwriter Defendants also demanded and obtained an agreement from Root that Root would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that Root had purchased millions of dollars in directors' and officers' liability insurance;

(c) Representatives of the Underwriter Defendants also assisted Root and the Individual Defendants in planning the IPO, and purportedly conducted an adequate and reasonable investigation into the business and operations of Root, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order

to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Root's operations and financial prospects;

(d) In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Root's lawyers, management and top executives and engaged in "drafting sessions" between at least August 2020 and October 2020. During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Root stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Root would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Root management and top executives, the Underwriter Defendants knew, or should have known, of Root's existing problems as detailed herein; and

(e) The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with offers and sales thereof, including to plaintiff and the Class.

13. The Underwriter Defendants together with the Individual Defendants are cited herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

14. Founded in 2015, Root began by offering car insurance locally and now uses a smartphone-administered driving test and an algorithm to offer estimates. Prospective Root customers download its mobile app to track their driving habits. This takes place before the Company confirms them as customers. Using telematics data from smartphones, the app purportedly

tracks 200 factors including braking frequency, turning speeds and phone usage. After collecting this information, Root purportedly tabulates all the data to offer the driver a personalized quote for insurance. Root's demographic target are those drivers with better driving records and habits, which Root represents are over-paying for insurance based on their below-average propensity to be involved in accidents. Root targets these prospective customers, promising to offer them better rates in exchange for their willingness to be tracked by the Company. As a result of the Company's data-rich platform, tailored policies and customer base with relatively better driving habits and lower accident rates, Root claims to be able to more profitably provide auto insurance.

15. During fiscal year 2019 (ended December 31, 2019), Root reported $290.2 million in revenues and a net loss of $282.4 million. During the first six months of 2020 (ended June 30, 2020), the Company reported revenues of $245.4 million and a net loss of $144.5 million.

16. On or about August 10, 2020, well into the Company's third quarter 2020 ("3Q20") ending September 30, 2020, Root filed with the SEC a confidential Registration Statement on Form S-1, which would later be utilized for the IPO following several amendments. On October 28, 2020, the SEC declared the Registration Statement effective. On or about October 29, 2020, Root and the Underwriter Defendants priced the IPO and filed the final Prospectus for the IPO, which forms part of the Registration Statement (collectively, the "Registration Statement").

17. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation.

18. Concerning the Company's costs of acquiring customers, the Registration Statement stated in pertinent part that "[t]he efficiency of [Root's] customer acquisition strategy has resulted in a cost of acquisition advantage versus direct and agent channels," adding that "[w]hile [its] customer

acquisition costs can vary by channel mix, by state or due to seasonality, over the period from August 2018 to August 2020 [Root's] *average customer acquisition cost was $332*."

19.     Elsewhere, in describing the Company's "Business Model," the Registration Statement emphasized the Company's successful use of technology to drive down customer acquisition costs "well below industry averages," stating, in pertinent part, as follows:

> We use technology to drive efficiency across all functions, including distribution, underwriting, policy administration and claims in particular. ***This allows us to operate with a cost to acquire*** and cost to serve ***advantage***. We efficiently acquire customers directly through multiple channels, including digital (performance), strategic partnerships, channel media and referrals, and ***as a result our marketing costs are well below industry averages***. Today, we acquire more than 75% of our customers through our mobile app and mobile website.
>
> \*     \*     \*
>
> We efficiently acquire customers through multiple digital channels such as Facebook and Google and highly strategic distribution partnerships with Stash, SoFi and Chime, where we leverage our partners' premier user experiences to approach captive audiences in a contextually relevant, data-centric way. ***Accordingly, our marketing costs are well below industry averages***.

20.     In describing the Company's "Sales and Marketing" expenses, though the Registration Statement represented that those costs had increased in absolute dollars between the first six months of 2019 and the first six months of 2020, the Registration Statement stated that the costs had declined on a percentage basis, stating in pertinent part that: "***Sales and marketing as a percentage of revenue decreased*** from 37.7% of revenue for the six months ended June 30, 2019 to 21.7% of revenue for the six months ended June 30, 2020 due to a slowdown in digital marketing spend related to the uncertainty surrounding the COVID-19 pandemic beginning in mid-March 2020."

21.     The $332 customer acquisition cost emphasized repeatedly in the Registration Statement was material to investors and was highlighted by those in the financial media reporting about the impending Root IPO. For instance, stock research blocker *coverager.com* published an

- 6 -

October 6, 2020 report titled "Root files for IPO" which highlighted the Company's low customer acquisition cost as described in the Registration Statement, stating, in pertinent part, as follows:

> Root distributes largely through the mobile channel, with over 75% of customers acquired through either their mobile app or mobile web platform. ***Over the period from August 2018 to August 2020 the company's average customer acquisition cost was $332***.

22. Likewise, an IPO advisory by *ipoboutique.com* stated, in pertinent part, as follows:

> They distribute largely through the mobile channel, with over 75% of customers acquired through either their mobile app or mobile web platform. . . .
>
> \*     \*     \*
>
> ***The efficiency of their customer acquisition strategy has resulted in a cost of acquisition advantage versus direct and agent channels***. While their customer acquisition costs can vary by channel mix, by state or due to seasonality, ***over the period from August 2018 to August 2020 their average customer acquisition cost was $332***.

23. The statements referenced above in ¶¶18-20 were inaccurate statements of material fact because they failed to disclose the following material facts which existed at the time of the IPO:

(a) Root had been paying on average at least $600 per customer in customer acquisition costs at the time of the IPO;

(b) Root's increased customer acquisition costs would continue to remain elevated as it sought to aggressively expand its business into more states; and

(c) As a result of the foregoing, Root was not on track to achieve the operational or financial results represented in the Registration Statement.

24. Under the rules and regulations governing the preparation of the Registration Statement, Root was required to disclose at the time of the IPO that, in reality, Root was then spending on average $600 acquiring each customer, nearly double the $332 claimed in the Registration Statement. The Registration Statement, however, contained no such disclosures. Pursuant to Item 303 of Regulation S-K [17 C.F.R. §229.303], and the SEC's related interpretive releases thereto, issuers are required to disclose events or uncertainties, including any known trends,

- 7 -

that have had or are reasonably likely to cause the registrant's financial information not to be indicative of future operating results. At the time of the IPO, Root's customer acquisition costs were much higher than the Registration Statement stated and were expected to continue rising as Root attempted to obtain more customers in more states. The adverse events and uncertainties associated with these declining trends were known to Defendants and reasonably likely to and did have a material impact on Root's profitability and net income from continuing operations. As a result, these adverse facts, trends and uncertainties were required to be disclosed in the Registration Statement, but Defendants failed to do so.

25. Based on Defendants' strong marketing efforts in the IPO, the shares of Root Class A common stock garnered a far higher price than Defendants had initially projected, selling at $27 per share, well above the $22 to $25 initial price target range, and selling well above the 24.6 million shares initially targeted. The IPO was a success, allowing the Company, certain pre-IPO venture capital investors who sold shares in the IPO, and the Underwriter Defendants to collectively sell more than 26.8 million shares of Root common stock to the public at $27 per share, raising more than $724.4 million in gross proceeds ($684.6 million in net proceeds after deducting underwriting discounts, commissions and offering costs) as follows:

|  | *SHARES SOLD* | *GROSS PROCEEDS* | *NET PROCEEDS* |
|---|---|---|---|
| Root | 24,249,330 | $618,721,655 | $618,721,655 |
| Entities affiliated with Silicon Valley Bank | 2,164,515 | $58,441,905 | $55,227,600 |
| DRD Contact, LLC | 417,000 | $1,259,000 | $10,639,755 |

26. Following the IPO, a stock analyst with UBS Investment Bank ("UBS") – an underwriter in the IPO – published an initiation report on Root that was communicated to UBS's customers on or about November 23, 2020. Purporting to cite "Company reports," the UBS report disclosed the significantly higher customer acquisition costs incurred in Root's 3Q20 and further

- 8 -

disclosed that these costs were expected to continue to grow in the immediate future, stating in pertinent part as follows:

**Figure 15: Customer acquisition costs (CAC) quarterly forecast**

[Bar chart showing CAC from 1Q19 through 4Q22E, with values ranging approximately from 200 to 700, with estimated quarters (3Q20E onwards) shown in hatched pattern, peaking at 1Q21E around 700]

Source: Company reports, UBSe.

27.  The UBS report went on to lament that the Company could not continue to bear these increased customer acquisition costs, stating Root would instead be forced to raise additional capital to survive, further diluting existing shareholders. The UBS report stated in pertinent part as follows:

- 9 -

> **Q: Can current capital support growth expectations?**
>
> **UBS VIEW**
> Not likely. We currently forecast an additional $800mm equity capital raise in the second half of 2022 to support growth. As a licensed P&C insurance company, Root is required to maintain minimum capital requirements. In our view, ROOT's reinsurance strategy has helped to relieve some of the capital strain placed on the business through rapid growth. That said, higher loss ratios on new business and heavy customer acquisition costs will result in elevated cash burn and net losses through 2023 requiring additional capital raises (debt and/or equity) to maintain regulatory capital requirements.
>
> **EVIDENCE**
> Operating cash burn could average as much as $422mm each year through 2023.
>
> **WHAT'S PRICED IN?**
> We estimate that ROOT currently trades at ~33x EV/2022 AGP vs. peers of 29.2x..

28.     Following the UBS report, the market price of Root Class A common stock fell on November 24, 2020.  When the Company released disappointing 3Q20 financial results on December 1, 2020, the market price of Root declined even further, with Root common stock closing at $14.70 per share on December 2, 2020.

29.     When Root reported its fiscal year 2020 financial results after the close of trading on February 25, 2021, the Company disclosed that its annual losses had ballooned to $4.81 per share, substantially worse than the investment community had been led to expect based on Defendants' bullish statements in the Registration Statement.  During the conference call held with investors and stock analysts that day, defendant Rosenthal admitted that Root had consciously undertaken a "decision to pull back on marketing spend towards the end of the first quarter," adding that this had indeed "slowed our growth in the second half of 2020, overall."  This statement directly undermined the Registration Statement's claim that Root's customer acquisition costs were only $332 due to technological advantages.  Later in the call, defendant Rosenthal stated that Root's customer acquisitions costs would continue to grow, as Root was then "expecting . . . customer acquisition

cost levels to be a bit higher in the fourth quarter, and then in the early part of this year [2021]." On February 26, 2021, the price of Root Class A common stock closed at $13.49 per share.

30. Then on March 9, 2021, BofA Securities stock research analyst Joshua Shanker initiated coverage on Root with an "Underperform" rating based on Root's inability to become cash flow positive until 2027, finding that Root "will require not insignificant cash infusions from the capital markets to bridge its cash flow needs."

31. On March 9, 2021, Root's stock price closed at $12.17 per share, a ***more than 50%*** decline from the IPO price less than five months previously.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action on behalf of a class consisting of all those who purchased Root Class A common stock pursuant and/or traceable to the Registration Statement issued in connection with the IPO (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Root or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants violated the Securities Act;

(b) whether the Registration Statement was negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

### COUNT I

#### For Violation of §11 of the Securities Act
#### Against All Defendants

38. Plaintiff incorporates ¶¶1-37 by reference.

39. This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

40. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

41. Defendant Root is strictly liable to plaintiff and the Class for the misstatements and omissions in the Registration Statement.

42. None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

43. By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the Securities Act.

44. Plaintiff acquired Root common stock in and/or traceable to the IPO.

45. Plaintiff and the Class have sustained damages. The value of Root common stock has declined substantially subsequent to and due to Defendants' violations.

46. At the time of their purchases of Root common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiff commenced this action. Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff commenced this action.

## COUNT II

### For Violation of §15 of the Securities Act
### Against the Company and the Individual Defendants

47. Plaintiff incorporates ¶¶1-46 by reference.

48. This Count is brought pursuant to §15 of the Securities Act against the Company and the Individual Defendants.

49. The Individual Defendants each were control persons of Root by virtue of their positions as directors and/or senior officers of Root. The Individual Defendants each had a series of

- 13 -

direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Root. The Company controlled the Individual Defendants and all of Root's employees.

50. The Individual Defendants each were culpable participants in the violations of §11 of the Securities Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: March 25, 2021                    MURRAY MURPHY MOUL + BASIL LLP
                                         JOSEPH F. MURRAY


                                         s/ JOSEPH F. MURRAY
                                         JOSEPH F. MURRAY (0063373)

1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)
murray@mmmb.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
MARY K. BLASY
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
srudman@rgrdlaw.com
mblasy@rgrdlaw.com

ROBBINS LLP
BRIAN J. ROBBINS
GREGORY DEL GAIZO
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)
brobbins@robbinsllp.com
gdelgaizo@robbinsllp.com

Attorneys for Plaintiff

# CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAW

Jerad Kitzler ("Plaintiff") declares as to the claims asserted, or to be asserted, under the federal securities laws, that:

1. Plaintiff has reviewed the Class Action Complaint and has retained Robbins Geller Rudman & Dowd LLP and Robbins LLP as counsel in this action for all purposes, and authorized the filing of the Complaint.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| SECURITY | TRANSACTION (Purchase/Sale) | QUANTITY | TRADE DATE | PRICE PER SHARE/SECURITY |
|---|---|---|---|---|
| ROOT | Purchase | 200 | 10/28/20 | $29.04 |
| | | | | |
| | | | | |
| | | | | |

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary, and Plaintiff is willing to serve as a lead plaintiff, a lead plaintiff being a representative party who acts on behalf of other class members in directing the action.

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws within the past three years, unless otherwise stated in the space below:

_____

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

7. Plaintiff represents and warrants that he is fully authorized to enter into and execute this certification.

3/24/2021 I declare under penalty of perjury that the foregoing is true and correct. Executed this _____ day of March, 2021.

DocuSigned by:
*[signature]*
E1E0BADB73CB477...
JERAD KITZLER